UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCIA WALKER,

       Plaintiff,

v.                                Lead Case No. 1:04-cv-563
                                       Case No. 1:04-cv-564

COMMISSIONER OF SOCIAL        Hon. Gordon J. Quist
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of two final decisions of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

Plaintiff was born on February 5, 1965 (AR 106).[1]  She earned a GED, a high school diploma and attended one year of college (AR 123). She has no previous employment history, other than working for two months at a pickle packing plaint in 1992 (AR 118).  Plaintiff filed two separate applications for SSI.

In her first SSI application, filed in 1995, plaintiff alleged a disability onset date of January 29, 1991 (AR 420).  At that time, plaintiff's name was Marcia Watt. She identified her disabling conditions as carpal tunnel surgery on her left hand in 1995, pain and numbness in both hands, swollen ankles and pain under her feet (AR 459). After administrative denial of plaintiff's claim, Administrative Law Judge (ALJ) Douglas W. Johnson reviewed plaintiff's claims *de novo* and

---

[1] Citations to the administrative record will be referenced as (AR "page #").

entered a decision denying these claims on September 23, 1998 (AR 399-409). This decision (hereafter referred to as the "1998 decision"), was later approved by the Appeals Council on September 23, 1999, has become a final decision of the Commissioner and is now before the court for review (AR 10, 390-91). On July 29, 2004, the Appeals Council granted plaintiff an extension to file this appeal in federal court.

In her second SSI application, filed in 2000, plaintiff alleged a disability onset date of September 23, 1998 (AR 106). At that time, plaintiff's name was Marcia Walker. She identified her disabling conditions as "chronic demyelinating polyneuropathy, multiple entrapment neuropathy, Bil upper extremity polyneuropathy, depression," and memory loss, short attention span and post traumatic stress (AR 117). After administrative denial of plaintiff's second application, ALJ Alan R. Diodore reviewed her claims *de novo* and entered a decision denying these claims on March 29, 2002 (AR 18-27). This decision (hereafter referred to as the "2002 decision"), was later approved by the Appeals Council on July 29, 2004, has become a final decision of the Commissioner and is now before the court for review (AR 6-8).

Plaintiff filed two suits to appeal these decisions on August 23, 2004. *See Walker v. Commissioner*, No. 1:04-cv-563 and *Walker v. Commissioner*, No. 1:04-cv-564. These two cases were consolidated on November 24, 2004. *See* docket no. 6. Then, on May 23, 2005, the cases were remanded to the Appeals Council to locate or reconstruct the missing claims file. *See* docket no. 19. The cases were re-opened on May 24, 2006. *See* docket no. 24. The parties completed briefing in this matter on November 14, 2006. These appeals are now ripe for decision.

**I. LEGAL STANDARD**

        This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

        The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

        A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases.  *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).  "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date."  *Casey v. Secretary of Health*

4

*and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).  *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II.  ALJ'S DECISION

### A.   The 1998 decision

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since January 25, 1995, the date she filed the application (AR 65).  Second, the ALJ found that plaintiff had severe impairments of "neuropathy secondary to a history of bilateral carpal tunnel surgeries, low back disorders, post-traumatic stress syndrome, dysthymia, and alcoholism in partial remission" (AR 65). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 65).  The ALJ decided at the fourth step that:

> The claimant lacks the residual functional capacity to lift and carry more than twenty pounds occasionally and ten pounds frequently; bend, twist, kneel, stoop, or crouch repetitively; use her hands repetitively in a forceful manner; or use vibratory hand tools.  Furthermore, the claimant would not be able to perform jobs which involved more than simple, routine tasks and frequent or extensive interaction with co-workers and the general public.

(AR 66).  The ALJ concluded that plaintiff was unable to perform her past relevant work (AR 66). The ALJ also found that plaintiff's allegations regarding her limitations are not entirely credible (AR 65).

At the fifth step, the ALJ determined that plaintiff was capable of performing a range

of light work (AR 66). The ALJ found that there are a significant number of jobs in the national economy that plaintiff can perform, such as security guard (3,000 jobs); telephone interviewer (4,000 jobs); cashier (3,000 jobs); inspector (1,500 jobs); security board monitor (1,500 jobs); and ticket agent (4,000 jobs) (AR 65-66). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 66-67).

### B.    The 2002 decision

Plaintiff's second claim also failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on September 23, 1998 (AR 18, 26). Second, the ALJ found that plaintiff had severe impairments of "diabetes mellitus, peripheral neuropathy, history of asthma, history of alcohol and substance abuse, and depression" (AR 26). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 26). The ALJ decided at the fourth step that plaintiff had an identical residual functional capacity (RFC) as found in the 1998 decision (although phrased in a slightly different manner):

> The claimant has the residual functional capacity to perform the demands of work except for lifting and carrying more than 20 pounds occasionally and 10 pounds frequently; no repetitive bending, twisting, kneeling, stooping, or crouching; no repetitive forceful use of her hands; and no use of vibratory hand tools. The claimant would be unable to perform jobs which involved more than simple, routine tasks and which required frequent or extensive interaction with co-workers and the general public.

(AR 26). The ALJ concluded that plaintiff was unable to perform her past relevant work (AR 26). The ALJ also found that plaintiff's allegations regarding her limitations are not entirely credible (AR

26).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 27). The ALJ found that there are a significant number of jobs in the national economy that plaintiff can perform, such as assembler (4,000 jobs); inspector (5,000 jobs); sorter (5,000 jobs); machine operator (4,000 jobs); attendant (4,000 jobs) and general clerk (5,000 jobs) (AR 27). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 27).

## III. ANALYSIS

Plaintiff has filed two separate briefs in this matter.

### A.    The 1998 decision

Plaintiff raised three issues in opposition to this decision.

### 1.    The ALJ violated the treating physician rule.

Plaintiff contends that the ALJ improperly rejected the opinion of her treating physician, William Kirchaine, M.D., who opined in a sworn statement dated November 12, 1996, that plaintiff's hand problems preclude fine fingering, repetitive use of the hands, and lifting over five pounds (AR 592, 600-02). Plaintiff's "1998 Brief" at 7.[2]  Dr. Kirchaine testified that plaintiff has been a patient of his clinic since 1991 and that he has been her personal family physician since March 9, 1994 (AR 595).

A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.

---

[2]It is unclear whether this document was entered as exhibit 27 or 31.   A stamp on the statement indicates that it was received at a hearing as exhibit 27; however, the number "27" is crossed out and replaced by the number "31" (AR 592).  Nevertheless, it appears that it was part of the administrative record, because ALJ Johnson accepted exhibits 1 through 43 into evidence at the July 2, 1998 hearing (AR 359).

2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

In his 1998 decision, ALJ Johnson discussed Dr. Kirchaine's treatment notes (AR 61, 63). The ALJ summarized the doctor's opinion as follows, "[t]he residual functional capacity of the undersigned is based, in part, on the objective medical evidence in which Dr. Kirchaine stated that the claimant had marked upper extremity limitations and restrictions regarding the interaction with people (Exhibit 27)" (AR 63). ALJ Johnson gave no reasons for rejecting Dr. Kirchaine's opinions that plaintiff could not perform fine fingering or lift over five pounds. The ALJ found that

8

plaintiff could perform light work, i.e., lift up to 20 pounds at a time and frequently lift 10 pounds (AR 66). *See* 20 C.F.R. § 416.967(b). The ALJ also considered the opinions expressed by the state agency physicians issued in March 1995, July 1995, April 1997 and September 1997, but rejected some of the conclusions because "evidence received into the record at the hearing level convinces the undersigned that the claimant is more limited than originally thought" (AR 63-64). One state agency physician concluded that plaintiff could perform medium work, i.e., lift up to 50 pounds at a time and 25 pounds frequently (AR 626). *See* 20 C.F.R. § 416.967(c). The record reflects a wide range of opinions regarding plaintiff's physical strength and abilities. Under these circumstances, the ALJ failed to articulate good reasons for not crediting the opinions of Dr. Kirchaine, plaintiff's treating physician. *See Wilson*, 378 F.3d at 545.

Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of Dr. Kirchaine's opinions.

**2.      The ALJ improperly employed boilerplate credibility findings.**

**3.      The ALJ lacked valid reasons to reject plaintiff's credibility.**

Next, plaintiff contends that the ALJ improperly used boilerplate language to reject plaintiff's credibility:

> It becomes immediately apparent that the ALJ did not draft the reasons for rejecting [p]laintiff's credibility but instead plucked the language from some boilerplate opinion that was evidently circulating among ALJs. Use of such boilerplate violates plaintiff's statutory (if not constitutional) right to meaningful judicial review of administrative decisions.

Plaintiff's "1998 Brief" at 10.

It is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987)

(per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).   An ALJ's credibility determinations are accorded deference and not lightly discarded.  *See Casey v. Secretary of Health and Human Servs.*,  987 F.2d 1230, 1234 (6th Cir. 1993); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987).  An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict).

Here, the ALJ found contradictions in the record:

Despite the claimant's alleged debilitating symptomatology, the claimant's sister reported that the claimant got her children off to school each morning, attended church services, cooked meals and shopped with assistance, watched television ten to twelve hours each day, and listened to music (Exhibit 10).  At Exhibit 9, Ms. Watts [plaintiff] noted that she read the Bible for thirty minutes each day without assistance.  Grasping the thin pages would be quite difficult for someone with the severity of hand deficits she alleges.

Although Ms. Watts testified at the hearing that she was severely depressed, the claimant described herself at Exhibit 22 as getting along with people easily, very friendly, open-hearted, and a good listener.  Although she reported that she was shy, she put on a happy face and made herself get out of the house and deal with the public.

Dr. Kirchaine noted at Exhibit 26, page 30, that the claimant was upset because he had not "disabled" her and that she felt she should be totally disabled. Dr. Kirchaine indicated at that point that he was not so sure that many of her physical symptoms were not related to her stress and depression.  The doctor noted that every time he addressed one symptom she seemed to have another.  Yet, at Exhibit 26, page 4, Dr. Kirchaine believed that Ms. Watt was unable to do any significant manual labor which he thought by education was all that she was qualified to do. This opinion is not consistent with her attending college for one year to study to be a paralegal.

10

At Exhibit 38, page 2, Dr. Ika [of the Gerber Memorial Health Services, Occupational Medicine Clinic] opined that, despite the multiple chronic problems alleged by Ms. Watt, not the least of which could be considered a rather severe deficit of general knowledge, he could find no objective evidence to support her alleged impairments and that the claimant was capable of economically productive work.

The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the claimant's own description of her activities and lifestyle, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the claimant's demeanor at hearing, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and the claimant's assertions concerning her ability to work.

(AR 62-63).

Viewing ALJ Johnson's decision as a whole, the court is convinced that he performed an appropriate credibility determination. The court disagrees with plaintiff's contention that this credibility determination is "boilerplate." *Black's Law Dictionary* defines "boilerplate" as "[l]anguage which is used commonly in documents having a definite meaning in the same context without variation; used to describe standard language in a legal document that is identical in instruments of like nature." *Blacks Law Dictionary* at 159 (Fifth Edition). While the ALJ's conclusionary paragraph may be "boilerplate" in the sense that it recites the matters considered by the ALJ, his conclusions are supported by substantial evidence as set forth in other portions of the decision.

11

Finally, the ALJ was in the best position to determine plaintiff's demeanor and is entitled to consider plaintiff's demeanor in assessing her credibility.  A witness' demeanor includes her physical appearance, outward bearing, or behavior, and  "embraces such facts as the tone of voice in which a witness' statement is made, the hesitation or readiness with which his answers are given, the look of the witness, his carriage, his evidences of surprise, his gestures, his zeal, his bearing, his expression, his yawns, the use of his eyes, his furtive or meaning glances, or his shrugs, the pitch of his voice, his self-possession or embarrassment, his air of candor or seeming levity." *Id.* at 387.  By stating that he reviewed plaintiff's "demeanor at hearing," the ALJ has encompassed all of these considerations.   Because the ALJ has the unique opportunity to question and observe the social security claimant, his credibility determinations are accorded deference and not lightly discarded.  *See Casey*,  987 F.2d at 1234; *Hardaway*, 823 F.2d at 928.

Accordingly, the court concludes that the ALJ properly evaluated plaintiff's credibility.

### B.      The 2002 decision

Plaintiff raised three issues in opposition to this decision entered by ALJ Alan R. Diodore on March 29, 2002 (AR 18-27).

### 1.      The ALJ's hypothetical to the VE failed to include limitations the ALJ himself found existed.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately

12

portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228,  231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, plaintiff contends that "while the ALJ found [p]laintiff limited from frequent or extended interaction with coworkers and the public, no such limitation was included in any hypothetical to the VE." Plaintiff's "2002 Brief" at 7 (footnote and citation omitted). Consequently, plaintiff contends that the ALJ should not have considered her capable of working as a ticket taker or parking lot attendant, because such jobs are beyond the capabilities of one who cannot interact with the public. *Id.* The court agrees with plaintiff that the VE's testimony does not support ALJ Diodore's finding that she could perform 27,000 jobs.[3]

In his 2002 decision, ALJ Diodore found that due to plaintiff's limitations, she "would be unable to perform jobs which involved more than simple, routine tasks and which required frequent or extensive interaction with co-workers and the general public" (AR 26). ALJ Diodore concluded that plaintiff's limitations did not prevent her from performing jobs such as assembler (4,000 jobs); inspector (5,000 jobs); sorter (5,000 jobs); machine operator (4,000 jobs); attendant (4,000 jobs), and a general clerk (5,000 jobs) (AR 27).

ALJ Diodore posed five hypothetical questions to the VE (AR 349-52). While the third hypothetical question assumed that plaintiff should be limited to "simple, unskilled sorts of

---

[3] The court notes that ALJ Diodore did not identify the ticket taker jobs. Rather, ALJ Johnson identified those jobs in the 1998 decision (AR 65-66).

activities" (AR 350), none of the hypotheticals excluded jobs which "required frequent or extensive interaction with co-workers and the general public" (AR 26).  In short, the ALJ's hypothetical questions did not accurately portray the limitations that the ALJ found in his RFC determination. It is unclear from the record which, if any, of the 27,000 identified jobs would be precluded by this omitted restriction.

Accordingly, the 2002 decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), for a re-evaluation of plaintiff's ability to perform work at step five of the sequential evaluation.

### 2.    The ALJ lack sufficient reason to reject plaintiff's credibility.

Next, plaintiff contends that ALJ Diodore gave insufficient reasons for finding that she was not entirely credible.  ALJ Diodore made the following credibility determination:

> The claimant has not been totally credible in her reports to various physicians and has also not been truthful in her reports about her periods of alcohol consumption. The claimant testified that she has virtually no feeling in her hands; yet her treating physician reported on January 7, 2002 that " . . . she hasn't had any real numbness or tingling in her feet, though she does have that occasionally . . ." The claimant does have a history of upper and lower extremity neuropathy secondary to both alcoholism and diabetes, although she states that she is no longer drinking.

> On October 29, 2001, the claimant complained of severe back and neck pain after working one day.  However, on examination, the claimant had full range of motion, strong grip, normal gait and station, and negative straight-leg raising.  She was diagnosed with thoracic back pain (Exhibit B11F dated October 29, 2001). There is no other recent treatment for any back pain.  Exhibits B1F, pp. 9 and 10, lead one to conclude that the claimant's upper extremity problems are more episodic than constant. Exhibit B1F is the most favorable to the claimant in this record, but the treating source does not place any restrictions on her.  The neurologist also did not place any restrictions on the claimant's activities (Exhibit B2F).  The MRI of the spine was normal (Exhibit 8F).  The claimant reported on numerous occasions that she was not taking her medication as prescribed and on occasions quit taking medications without consulting her treating source.  She testified that her depression has improved since cessation of drinking and reported her breathing was much better since she stopped smoking.  Although the claimant has alleged restrictions of daily

14

activities, such restrictions are self-imposed and not on the advice of her treating sources. No physician has stated that the claimant is disabled nor placed any limitations on her activities other than instructions to stop smoking and to stop drinking. She has required no emergency treatments or any hospitalizations for any reason in the past several years. The claimant's allegations of disabling symptoms are neither credible nor supported by the medical evidence of record.

(AR 23-24).

Plaintiff disputes the credibility findings with respect to: her drinking history; the lack of restrictions by treating doctors (i.e., Drs. Kirchaine and Landan); the report of only occasional foot numbness; and the lack of corroboration for her upper back complaints. Plaintiff's "2002 Brief" at 10. After reviewing the record, the court concludes that ALJ Diodore's credibility determination is supported by substantial evidence and that he could properly discount plaintiff's credibility after finding that contradictions among the medical records, plaintiff's testimony and other evidence. *See Walters*, 127 F.3d at 531.

There is no question that plaintiff misrepresented her drinking history to a treating neurologist, Ivan R. Landan, M.D. In his July 18, 2000 report, the doctor summarizes plaintiff's drinking history as follows, "[s]he used to be a heavier drinker, though has not drunk for some seven years" (AR 207). In her brief, plaintiff admits that she resumed drinking in 1997 and that she admitted to "heavy, almost daily" drinking in January 2000. Plaintiff's "2002 Brief" at 10. Her history as presented to Dr. Landan, a treating specialist, were not consistent with statements given to other medical providers.

The ALJ's observations with respect to the lack of work restrictions, occasional foot numbness and lack of corroboration for severe upper back pain undercut plaintiff's contention that she suffers from severe disabling symptoms that prevent her from performing any work activities. Plaintiff points out that she had paraspinal muscle tension during an examination in October 2001

15

(AR 301).  However, at the same examination, the doctor noted that while plaintiff was in mild distress with back pain and extremely limited flexion, she had a normal gait and station, could ambulate on her toes and heels without difficulty, had full range of motion of the neck and upper extremities, had strong and equal grip strength bilaterally, and negative straight leg raises (AR 301). She had no report of back pain during later examinations in December 2001 and January 2002 (AR 305-06, 308).  The single episode of muscle tension in October 2001 does not establish objective medical evidence to support plaintiff's claim that she has been disabled by back pain since her alleged onset date of September 23, 1998.

### 3.     The ALJ adopted the previous ALJ's erroneous limitations.

Finally, plaintiff has provided no argument in support of her third claimed error, i.e., that ALJ Diodore adopted ALJ Johnson's erroneous limitations. The court will not address this bald assertion of error.   "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

## IV.   Recommendation

I respectfully recommend that both of the Commissioner's decisions be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

With respect to the 1998 decision, the Commissioner should re-evaluate Dr. Kirchaine's opinions that plaintiff's hand problems preclude fine fingering, repetitive use of the hands, and lifting over five pounds.

With respect to the 2002 decision, the Commissioner should re-evaluate plaintiff's ability to perform other work in the national economy pursuant to step five of the sequential evaluation.

Dated:  January 4, 2007                    /s/ Hugh W. Brenneman, Jr.
                                           Hugh W. Brenneman, Jr.
                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).